BaeNey, J.,
delivered the opinion of the court:
This is a suit on contract, a copy of which is attached to the petition and made a part of the same. The question for decision in this case arises upon the demurrer of the defendants to the plaintiff’s amended petition.
The averments in the petition are substantially as follows: The contract in question provided for the furnishing of coal to the defendants of certain qualities and varieties named, the same to be delivered at Fort Morgan, Mobile, Ala. That this coal should be subject to inspection at the place of delivery by the officer receiving and accounting for the same; and if objection was made to any of said coal a board of United States Officers was to be convened to decide whether the same was according to contract, and the decision of such board was to be final when approved by the department commander. That March 24, 1906, the plaintiff tendered two cargoes of coal under said contract which was rejected by the United States quartermaster, and the action of such quartermaster was affirmed by a board of officers convened for the purpose of inspecting said coal as provided for in the contract.
Thereupon the plaintiff requested the quartermaster for the' privilege of placing such rejected coal upon the wharf adjacent to- said fort to remain there until the decision of the department commander as to whether the action of said board of survey should be approved. The quartermaster refused to allow the plaintiff such privilege and ordered him to remove the coal from Fort Morgan, stating that it would not be received under any circumstances. The plain *397 tiff could not retain the coal upon the barges under the convoy of a tug except at an expense of $60 per day, with the risk of the loss of the entire cargo by storm, and in consequence removed the coal to Mobile.
April 30, 1906, 36 days after the tendering of this coal, the plaintiff was notified that the department commander had reversed the action of said quartermaster and hoard of survey and had decided to accept said coal, and the plaintiff was compelled to and did reship the same from Mobile to Fort Morgan, where it was accepted.
The plaintiff alleges that he suffered an actual loss of five hundred and ten dollars and ninety-nine cents ($510.99) as a result of being thus compelled to return said coal to Mobile and to reship the same as before stated, and that he made application for said sum to the Quartermaster’s Department and that payment has been refused. This suit is brought to recover that sum.
That provision of the contract which seems to us decisive of the question involved in this case is as follows:
“ For steam coal, twenty-four and one-half (24.50) cents per hundred pounds, delivered in bins at post; domestic coal, thirty-three and one-half (33.50) cents per hundred pounds delivered in bins at post.
“ It is understood and agreed that the contractor will be notified ten (10) days before deliveries will be required, and that he will be afforded proper wharfage facilities upon giving due notice to the post quartermaster as to the time deliveries will be made.”
The question before us for consideration and decision seems to be whether under the above provision in the contract the plaintiff had the right to claim the privilege of placing his tentatively rejected coal on the wharf at Fort Morgan until the final decision of the department commander should be received. To complete delivery the contract required him to put the coal in bins at the post. Of course he could not do that until it had been accepted. As preliminary to putting the coal in bins within the post it was necessary that he should have the privilege of first placing it upon the wharf, and the contract so provided, though he would doubtless have had that right without any such *398 privilege being specified. Both parties to the contract knew that the decision of the quartermaster and the board of survey was not final; in fact, had no force until finally approved by the department commander. Under these circumstances it seems to us to have been reasonably within the terms of the contract that the plaintiff should have been allowed the privilege of retaining the coal upon the wharf to await such final decision. We think the phrase “ proper wharfage facilities” embraced that right; in fact, it would seem that that privilege was the most important thing secured for the plaintiff by those words, because the right to use the wharf simply as a passageway from the boat to the bins within the post was allowed to the plaintiff without being provided for in terms in the contract.
In construing contracts, courts must take into consideration the situation of the parties and all the circumstances surrounding its execution and known at the time is was made.
As was said by the Supreme Court in Nash v. Towne (5 Wall., 689) :
“ Courts, in the construction of contracts, look to the language employed, the subject matter, and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and in that view they are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and so to judge of the meaning of the words and of the correct application of the language to the things described.” (Ibid., 699.)
Also, in Merriam v. United States (107 U. S., 437) :
“ It is a fundamental rule that in the construction of contracts the courts may look not only to the language employed, but to the subject matter and the surrounding circumstances, and may avail themselves of the. same light which the parties possessed when the contract was made.” (Ibid., 441.)
The plaintiff was obligated by his contract to deliver coal of the kind and quality specified in the contract within the time therein limited. If the coal tendered would not pass final inspection, he was under obligation to tender and de *399 liver such coal as would. His conduct in awaiting the final decision of the department commander, which resulted in his favor, was reasonable and within his right under the contract, and he should have been allowed reasonable facilities for caring for his coal in the meantime, and we think the contract so provided.
The facts set out in the petition show that the expense to him if he had retained the coal upon the barges under the convoy of a tug for the 36 days before the decision of the department commander was received would have been more than four times what it was to carry it to Mobile and reship it to the fort.
Under the averments of the petition we think the plaintiff is entitled to recover, and the demurrer is overruled, with leave to the defendants to answer as they may be advised.